[Crim. No. 23063. Dec. 12, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
MIGUEL HALL, Defendant and Appellant.

162

**COUNSEL**

Theodore Winchester, under appointment by the Supreme Court, for Defendant and Appellant.

Quin Denvir, State Public Defender, and Mark Fogelman, Deputy State Public Defender, as Amici Curiae on behalf of Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Herbert F. Wilkinson and Dane R. Gillette, Deputy Attorneys General, for Plaintiff and Respondent.

William A. O'Malley, District Attorney (Contra Costa), and Harlan G. Grossman, Deputy District Attorney, as Amici Curiae on behalf of Plaintiff and Respondent.

## Opinion

**GRODIN, J.**—Defendant appeals from a judgment of conviction entered on jury verdicts finding him guilty of violating Penal Code sections 245, subdivision (a), and 236.[1] We reverse, having concluded that the trial court failed to exercise its judgment in determining whether the prosecutor's use of peremptory challenges was for reasons relevant to the case before it or reflected a constitutionally impermissible group bias. (See *People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748].)

Defendant, who is black, was charged with assault with intent to commit rape (§ 220), assault by means of force likely to cause great bodily harm (§ 245, subd. (a)), and false imprisonment (§ 236). The complaining witness, who is white, identified defendant as the man who approached her during a party held in a building housing decorators' showrooms, dragged her into a room where he strangled her until she lost consciousness, and fondled her when she came to, eventually releasing her when she agreed to forgive him. A first trial resulted in a mistrial when the lone black on the jury did not join the remainder of the jury in voting for guilty verdicts.

At the retrial, during voir dire of the jury panel, the prosecutor used peremptory challenges to excuse at least four black prospective jurors. After the prosecutor had excused two blacks with his first three peremptory challenges,[2] defendant asked that the People be required to make a showing that no systematic exclusion of blacks was underway if any further peremptory challenges were used to exclude black prospective jurors. The court deferred ruling until such challenges might be made.

The People then used their fourth and fifth peremptory challenges to excuse jurors, one or both of whom were black.[3] Defendant again asked that the People be required to make an appropriate showing before the panel of prospective jurors was exhausted. The prosecutor declined, although the court suggested that he put something on the record. Defendant asserted his belief that systematic exclusion of blacks was occurring and once again asked that reasons for the exclusion be put on the record if another black was excused peremptorily. Two black male prospective jurors[4] remained in

---

[1]All further references are to the Penal Code.

[2]These challenges were used to excuse Ella Cotton (juror No. 10), Frank Schultz (No. 6), and Jimmie Simon (No. 9). Cotton and Simon are black.

[3]Joseph Eldridge (No. 11) and Juanita Zetar (No. 7) were excused with these challenges. Black members of the panel had been seated to replace Cotton and Simon.

[4]Lenard Payton, who had been called to replace Zetar, was one of these jurors but was himself replaced when he failed to appear promptly for the resumption of his voir dire after the evening recess. When he did appear the jury had been selected and his name was among those from which alternates were randomly selected.

the jury box when this request was made, and the court again deferred ruling, stating that the motion would be taken under submission until the end of the voir dire. The People peremptorily challenged three more jurors before the twelve-person jury was selected. Their eighth, and last, peremptory challenge was exercised to excuse the last black prospective juror.[5] Noting that only one black was among the prospective jurors on a new panel that had been brought in, defendant asked the court to vacate the panel, and to inquire into the prosecutor's reasons for excluding the black prospective jurors.

The prosecutor then, in response to the court's request, provided the following explanation: "Miss Cotton, my confidential information indicated she has voted not guilty. I will allow the court to look at my records . . . . I have another reason why I excused Miss Cotton which I will take in conjunction with Miss Simon. Miss Simon indicated she had a son I believe to be approximately the same age as the Defendant. I believe that the Defendant, at the last trial, I understand at one point he live[d] in Chicago, I can't be sure, I believe he has some contact with Texas either in the military or something like that. Both Miss Cotton and Miss Simon said they were from Texas. That went into my considerations also. Miss Zetar . . . I excused her based on a conversation I had with a member of my office who brought her to my attention. As Mr. Goodman indicated to me in a prior case he had with her she did not comport herself as he felt a juror should, based on the evidence that was presented. As far as Mr. Robinson, I was watching Mr. Robinson . . . he segregated himself from the other members of the jury. Furthermore, I watched him in the courtroom today. There were light moments during the jury selection, however Mr. Robinson never cracked a smile. I came to my personal feelings based on his reaction in this courtroom that he did not possess the sensitivities necessary to realistically look at the issues and decide the facts in this case because it's a crime involving sexual assault which is a crime of sensitivity. For those reasons I have excused those names."

The trial court declined any inquiry into or examination of the prosecutor's explanation. Stating that "a peremptory challenge is a peremptory challenge, otherwise, it's meaningless," the judge expressed a view that systematic exclusion of a class of potential jurors occurs only when the prosecutor announces an intent to keep all members of that group off the

[5]This juror, Bennie Robinson, had replaced Joseph Eldridge, a black who had been excused earlier. (See fn. 3, *ante.*)

jury.[6] In response to defendant's plea that he see the reality of the prosecutor's actions, the judge again explained his belief that systematic exclusion is demonstrated only if the prosecutor expressly states an intent to exclude all members of a class. His comment also reflected a belief that the court may not or need not refuse to accept a prosecutor's explanation even if the explanation appears to be disingenuous.[7]

The jury was then sworn; defendant was convicted, as noted above, of aggravated assault and false imprisonment; his motion for a new trial, supported in part by his assertion of error in the denial of his jury composition motions,[8] was denied, and this appeal followed. Because we conclude that the trial court committed reversible error in failing to determine whether racial motivation underlay the prosecutor's exercise of peremptory challenges to remove blacks from the jury, it is unnecessary to consider defendant's additional arguments that prejudicial error occurred in the denial of discovery, admission of evidence of defendant's prior testimony, and in the court's refusal to give an instruction on the sufficiency of circumstantial evidence.

## I.

In *People* v. *Wheeler, supra,* 22 Cal.3d 258, this court faced the task of accommodating the People's statutory right to exercise peremptory challenges[9] with a defendant's constitutional right to a jury drawn from a representative cross-section of the community. We concluded that "the use

---

[6]Explaining that his own practice when he was a lawyer had been to place Greek persons on the jury if he represented a Greek defendant, the judge stated: "If the District Attorney tried to knock every Greek off and said, 'I'll knock every Greek off,' that's systematic exclusion. . . . I have seen nothing that has indicated, sure he knocked . . . everyone off, but he gave reasons for it and you show me some law that says even though he gives reasons it's grounds for a mistrial."

[7]"All I can say is I think that under peremptory challenges unless the District Attorney makes a statement 'I am going to exclude' . . . and he says 'I'm going to kick them off,' that is what we are talking about, but just to knock them off, when I ask him so he gives me some reason he has in his file and even though I may think they are fallacious these are peremptory challenges and I can't go into his mind and I can't go into your mind."

[8]When defendant urged his jury composition claim in support of the motion for new trial, the judge once again explained his understanding of systematic exclusion: "[The prosecutor] didn't as in the Wheeler case state that he was excluding them because they are blacks. So I can't go behind his reasons and he gave the reasons and I feel that they are adequate. . . . The reasons in my opinion were given. Maybe you don't agree with the reasons and I don't, but am I going to search the mind of the District Attorney or your mind. . . . I looked at the whole picture here and I saw no systematic exclusion." The judge further explained his understanding that "systematic exclusion" occurs only when a prosecutor (or defense counsel) "says, 'I'm excluding him because of his ethnic background" and that "then it is the duty of the Court to look into it. I don't see that here."

[9]Section 1069 describes a peremptory challenge as "an objection to a juror for which no reason need be given, but upon which the Court must exclude him."

of peremptory challenges to remove prospective jurors on the sole ground of group bias violates the right to trial by a jury drawn from a representative cross-section of the community under article I, section 16 of the California Constitution." (*Id.*, at pp. 276-277.) And, recognizing that it is the "responsibility of our courts to insure that [the constitutional] guarantee not be reduced to a hollow form of words, but remain a vital and effective safeguard of the liberties of California citizens" (*id.*, at p. 272), we undertook to establish a procedure for implementing that principle.

We began "with the proposition that in any given instance the presumption must be that a party exercising a peremptory challenge is doing so on a constitutionally permissible ground." (*Id.*, at p. 278.) █ The presumption is, however, rebuttable. (*Ibid.*) "If a party believes his opponent is using his peremptory challenges to strike jurors on the ground of group bias alone, he must raise the point in timely fashion and make a prima facie case of such discrimination to the satisfaction of the court. . . . If the court finds that a prima facie case has been made, the burden shifts to the other party to show if he can that the peremptory challenges in question were not predicated on group bias alone. The showing need not rise to the level of a challenge for cause. But to sustain his burden of justification, the allegedly offending party must satisfy the court that he exercised such peremptories on grounds that were reasonably relevant to the particular case on trial or its parties or witnesses—i.e., for reasons of specific bias as defined herein. [Fn. omitted.]" (*Id.*, at pp. 280-282.)

We recognized in *Wheeler* "that a peremptory challenge may be predicated on a broad spectrum of evidence suggestive of juror partiality. The evidence may range from the obviously serious to the apparently trivial, from the virtually certain to the highly speculative," and that "[r]esponsive to this reality, the law allows removal of a biased juror by a challenge for which no reason 'need be given,' i.e., publicly stated: in many instances the party either cannot establish his reason by normal methods of proof or cannot do so without causing embarrassment to the challenged venireman and resentment among the remaining jurors. [Fn. omitted.]" (*Id.*, at p. 275.)

Yet it is imperative, if the constitutional guarantee is to have real meaning, that once a prima facie case of group bias appears the allegedly offending party be required to come forward with explanation to the court that demonstrates other bases for the challenges, *and* that the court satisfy itself that the explanation is genuine. This demands of the trial judge a sincere and reasoned attempt to evaluate the prosecutor's explanation in light of the circumstances of the case as then known, his knowledge of trial techniques,

and his observations of the manner in which the prosecutor has examined members of the venire and has exercised challenges for cause or peremptorily, for "we rely on the good judgment of the trial courts to distinguish bona fide reasons for such peremptories from sham excuses belatedly contrived to avoid admitting acts of group discrimination." (*Id.*, at p. 282.)

II.

The People concede that defendant established a prima facie case of group bias by demonstrating that five of eight peremptory challenges were used to remove black jurors, and that none remained on the jury. ▇ The question then is whether the trial court satisfied its *Wheeler* obligation of inquiry and evaluation in the face of that prima facie case. We conclude that it did not.

While the trial court called upon the prosecutor to come forward with explanation for the peremptory challenges to the black jurors, it is apparent that the court made no serious attempt to evaluate that explanation for the purpose of determining whether it was bona fide. In fact, the record itself contains ample reason to suspect that it was not.

For example, one of the prosecutor's explanations for challenging juror Simon was that she said she was from Texas, and the defendant had indicated that he had "some contact with Texas either in the military or something like that." Actually, juror Simon had stated that she had lived in San Francisco most of her life, and in response to a question by the court where she had lived before she replied, "My family is from Texas." Notably, although the defendant had lived in Chicago, juror Lum who was not black and had lived in Chicago was not challenged, and nonblack jurors were not asked where they had lived before coming to California. Only one other juror—Cotton, who is black—was asked about residence, and her "Texas connection" was one of the grounds stated by the prosecution in explanation for the challenge to her as well.

Similarly, the prosecutor's alternate reason for excluding juror Simon was that she had a son whose age was the same as that of defendant. Three other nonblack, female jurors who were not challenged had grown children, among them at least five of whom were sons, and two of whom were about the same age as defendant. There was no evidence of the age of Simon's son other than his employment by the State of California.

Such disparate treatment is strongly suggestive of bias, and could in itself have warranted the conclusion that the prosecutor was exercising peremptory challenges for impermissible reasons. Moreover, and particularly in

that light, the explanations offered by the prosecutor for challenging certain of the other black jurors demanded further inquiry on the part of the trial court. Yet the trial court apparently considered itself bound to accept all of the prosecutor's explanations at face value, expressing the view that group bias is shown only when a prosecutor declares an intent to exclude all members of an ethnic group from the jury.[10] Such abdication is inconsistent with the court's obligations under *Wheeler,* and on authority of that case must be held to constitute error requiring reversal.

## III.

Finally, we decline the People's invitation, first advanced in their reply to the brief of amicus curiae, to overrule *Wheeler* on grounds that the procedure mandated by that decision is somehow "unworkable," or its benefit "illusory," or that as a result thereof the peremptory challenge cannot be used effectively in the effort to select an impartial jury. We realize that *Wheeler* has received a mixed reaction, both in the courts of other states (see, Annot., Use of Peremptory Challenges to Exclude From Jury Persons Belonging to a Class or Race (1977) 79 A.L.R.3d 14), and in the legal periodicals (e.g., Younger, *Unlawful Peremptory Challenges* (Fall 1980) 7 Litigation 23, 24). We observe, however, that the principles of *Wheeler* have found acceptance in the courts of Massachusetts (*Com.* v. *Soares* (1979) 377 Mass. 461 [387 N.E.2d 499]) and New Mexico (*State* v. *Crespin* (1980) 94 N.M. 486 [612 P.2d 716]), and that the constitutionality of the use of peremptory challenges to exclude potential jurors who are members of a particular group has also been an object of continuing concern to a majority of justices in the United States Supreme Court. (See *McCray* v. *New York* (1983) — U.S. — [77 L.Ed.2d 1322, 103 S.Ct. 2438] opns. on den. of cert. by Stevens, J. (joined by Blackmun, J., and Powell, J.) and by Marshall, J., dis. from den. of cert. (joined by Brennan, J.).)

More significantly, the People have not produced, or called to our attention, any empirical evidence in support of their criticism of *Wheeler.*[11] There have been three published opinions of the Court of Appeal since

---

[10]Any doubts as to the meaning of *Wheeler* in this regard should have been dispelled by our observation in *People* v. *Johnson* (1978) 22 Cal.3d 296, 297-298 [148 Cal.Rptr. 915, 583 P.2d 774] (a companion case), that there, "[u]nlike *Wheeler,*" the defendant did not have to show that the prosecutor was intentionally removing all blacks from the jury, because the prosecutor admitted as much.

[11]The same dearth of evidence beyond this case to suggest that trial judges have not been able to implement *Wheeler* procedures answers the suggestion of amicus curiae state public defender that further guidance from this court is necessary. We deem it unnecessary to remind counsel, whether prosecutor or defender, of their legal and ethical responsibilities to seek justice and to offer only truthful reasons for the exercise of peremptory challenges.

*Wheeler,* and none of these lends support to the People's claims.[12] In particular, the assumption underlying some articles critical of *Wheeler* (e.g., Younger, *Unlawful Peremptory Challenges, supra,* 7 Litigation 23) and echoed by the People that restricting the exercise of peremptory challenges to proscribe those prompted by group bias may eliminate the "hunch" challenge is without demonstrable merit. ■ A prosecutor may act freely on the basis of "hunches," unless and until these acts create a prima facie case of group bias, and even then he may rebut the inference.

The People implicitly acknowledge this defect in their argument by their further meritless assertion that *Wheeler* is internally inconsistent in condoning other arbitrary bases for the exercise of peremptory challenges. ■ As we explained in *Wheeler* and again in *Rubio* v. *Superior Court* (1979) 24 Cal.3d 93, 99 [154 Cal.Rptr. 734, 593 P.2d 595], the constitutional right to a jury drawn from a representative cross-section of the population is denied only when peremptory challenges are used to exclude from the jury members of a group who share perceptions gained through life experiences as members of the group, which perceptions and attitudes cannot be represented by other members of the community. Even when arbitrary, the exclusion of prospective jurors does not otherwise contravene a defendant's constitutional right to a jury drawn from a representative cross-section of the community since their absence does not deny the defendant the opportunity to have on the panel a prospective juror who can bring to the deliberations the perspective of a member of the excluded juror or group of jurors. (*Rubio* v. *Superior Court, supra,* 24 Cal.3d 93, 98-100; *People* v. *Wheeler, supra,* 22 Cal.3d 258, 276.)

■ The People have suggested that if this court concludes that the trial court failed to comply with the mandate of *Wheeler,* the matter be remanded for a new hearing at which the court may again rule on defendant's claim that the prosecutor's use of peremptory challenges was based on group bias. In some cases this procedure is preferable to reversal of the judgment. (See § 1260; *People* v. *Minor* (1980) 104 Cal.App.3d 194, 199-200 [163 Cal.Rptr. 501], and cases cited therein.) The procedure is not appropriate

---

[12]In *People* v. *Randle* (1982) 130 Cal.App.3d 286, 295 [181 Cal.Rptr. 745], where the same trial judge found that there had been no systematic exclusion of blacks, the Court of Appeal, which reversed the judgment for another reason, said that it would not reject that assessment. Only two other reported decisions involve trial court application of *Wheeler.* The Court of Appeal in *People* v. *Fuller* (1982) 136 Cal.App.3d 403 [186 Cal.Rptr. 283], held that the trial court had erred in concluding that no prima facie case had been made by defendant because inferences other than group bias could be drawn from the manner in which a prosecutor had exercised his peremptories. In *People* v. *Rousseau* (1982) 129 Cal.App.3d 526 [179 Cal.Rptr. 892], the Court of Appeal affirmed the judgment holding that the trial court had not erred in concluding that defendant had not made out a prima facie case by showing that the only two black prospective jurors on the panel had been challenged peremptorily.

here, however. The proceedings were conducted more than three years ago. It is unrealistic to believe that the prosecutor could now recall in greater detail his reasons for the exercise of the peremptory challenges in issue, or that the trial judge could assess those reasons, as required, which would demand that he recall the circumstances of the case, and the manner in which the prosecutor examined the venire and exercised his other challenges.

The judgment of conviction is reversed.

Mosk, J., Kaus, J., Broussard, J., and Reynoso, J., concurred.

**BIRD, C. J.**—Justices of our Courts of Appeal eloquently state their positions in opinions which are all too often vacated due to this court's grant of a hearing. This is such a case. While I concur in this court's majority opinion, I write separately to emphasize some of the fine points made by Justice Poche in his dissenting opinion below. The following pertinent portions of that opinion I adopt as my own.*

"The prosecutor exercised peremptory challenges to rid the panel of all black jurors. Five made it to the box. None stayed in. Despite timely objections,[1] a hearing was held only after number five had departed the premises. Only then did the trial court find that a prima facie case had been made that the challenges were unconstitutional. There was no other choice. (*People* v. *Fuller* (1982) 136 Cal.App.3d 403, 423 [186 Cal.Rptr. 283].)

"At that stage 'the burden shifts to the other party to show if he can that the peremptory challenges in question were not predicated on group bias

---

*The renumbered footnote numbers appear in brackets.

"[1]For example, 'MR. ROSEN: Under *People* vs. *Wheeler* which I think the Court is quite familiar with, I am object[ing] to the systemic [*sic*] exclusion of black people on this jury. As I look out into the panel that will [remain] there are only two black people at least in the audience. I don't even know if those people actually are on the panel. I believe that under the Wheeler decision such a systemic [*sic*] exclusion by race, I want a mistrial. [¶] MR. FAZIO: I have exercised three challenges, two of those have been black. Wheeler certainly *does not stand for that. Counsel has to make a better showing.* [¶] MR. ROSEN: There is only one black person on this jury. Do we have to wait until she is excused until we ask for such an offer by the prosecution as to their intention for the reason of the exclusion. I don't think one could point to one item of those people's background that have been excused, the two black people, that could be justified as reasonable trial tactics other than a prosecutor not wanting black jurors on a jury in which you have got a black defendant. I would ask for that showing to be made. [¶] MR. FAZIO: *Your Honor, I am not prepared to make it.* There certainly has been less than a systemic exclusion to use counsel's own words. [¶] THE COURT: I will so rule at this point, this isn't a systemic [*sic*] exclusion under the aut[h]orities, and I'll deny the motion for mistrial. However in some future time if you feel *to the contrary raise the issue and I'll consider it at that time.* [¶] MR. ROSEN: I'm going to raise the issue upon the next exercise of a challenge. [¶] THE COURT: Wait until the occasion arises. Very well.' (Italics added.)

alone. [Fn. omitted.] The showing need not rise to the level of a challenge for cause. But to sustain his burden of justification, the allegedly offending party must satisfy the court that he exercised such peremptories on grounds that were *reasonably relevant to the particular case on trial* or its parties or witnesses—i.e., for reasons of specific bias as defined herein. He, too, may support his showing by reference to the totality of the circumstances: for example, it will be relevant if he can demonstrate that in the course of this same voir dire he also challenged similarly *situated members of the majority group* on identical or comparable grounds. . . .' (*People* v. *Wheeler, supra,* 22 Cal.3d at pp. 281-282 [148 Cal.Rptr. 890, 583 P.2d 748], italics added.)

"If a baseball umpire admits he was not looking, would the baseball commissioner then carefully review the videotape to test the accuracy of his calls? It makes even less sense where liberty is at stake to search the record for evidence to support a finding of no systematic racial exclusion when the person who made that finding repeatedly admits it meant only that the prosecutor did not say 'I'm going to kick all blacks off.' Nevertheless, the majority opinion finds that 'the evidence' supports the finding.

"Examine the evidence: The reason given by the prosecutor to justify the challenge of Mrs. Simon was that she, like the defendant, had some contact with Texas.

"Take a look at the only evidence of this contact: 'THE COURT: How long have you lived in San Francisco? [¶] MRS. SIMON: Most of my life. [¶] THE COURT: Where did you live before you came to San Francisco? [¶] MRS. SIMON: My family is from Texas.'

"Can it seriously be contended that this is sufficient to satisfy any court anywhere that the exercise of the peremptory challenge to Mrs. Simon was on the grounds 'reasonably relevant to the particular case on trial or its parties or witnesses'? What the prosecutor found relevant was that he understood that at one point the defendant had in the past lived in Chicago and he also believed the defendant had 'some contact with Texas either in the military or something like that.' But apparently, that was relevant only if the juror was black: the prosecutor failed to inquire where the nonblack jurors had lived before they came to California (e.g., Allan Ohanley), and even when the prosecutor discovered a juror had lived in one of those two, small, suspect localities it did not bother him unless the juror was black.[2]

"But the prosecutor had another reason for ridding himself of this black woman: she 'had a son I believe to be approximately the same age as the

---

"[2] Nonblack juror Lum testified he had lived in Chicago but he drew no challenge.

Defendant.'[3] Is it not strange that the prosecutor had no such problem with the nonblack jurors? Mrs. Jean White had three sons, two of whom were about the same age as the defendant. Alice King had two 'grown' sons. Margaret Maguire had six 'grown kids.' But not being black these jurors were not challenged.

"Things do not get any better if you examine the reasons given for getting rid of Mr. Robinson: Because Mr. Robinson 'never cracked a smile' the prosecutor decided 'he did not possess the sensitivities necessary' for this type of case.

"Get the word out to black venire persons: they should all be jolly if they wish to sit in judgment of rape cases.

"The Supreme Court of this state has told us what the rules are to protect the right to trial by a jury drawn from a representative cross-section of the community under article I, section 16, of the California Constitution. Neither the prosecutor nor the trial judge seems to care. This court should.

"Like Mr. Robinson I am not cracking a smile. But then I have been to Texas and Chicago and my son is about the same age as the defendant."

I concur in the reversal of the judgment.

Broussard, J., concurred.

**RICHARDSON, J.**—I concur in the judgment under the compulsion of *People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748], in which I dissented. It appears that there was a failure to fulfill the burdensome duties which, in *Wheeler,* we have imposed on trial courts to explore and determine the real motives and reasons behind the prosecutor's peremptory challenges statutorily defined for over 110 years as challenges *"for which no reason need be given"* (Pen. Code, § 1069, italics added.). Quite reluctantly, therefore, I concur in reversal of the judgment of conviction.

---

"[3] The only evidence of the age of her son is Mrs. Simon's testimony that he works for the State of California in the highway maintenance department.