*Supp. 3 Opinion
COOPERMAN, P. J.
Defendant Herbert Pagel appeals from a judgment of conviction following a jury trial at which time he was found guilty as charged in a misdemeanor complaint of violating Vehicle Code section 20001 (hit-and-run resulting in injury).
His sole assignment of error concerns the trial court’s granting of the People’s motion to dismiss the selected jurors and to quash the remaining first panel of prospective jurors on the ground that defendant had exercised his peremptory challenges systematically to exclude Blacks from the jury.
We find no error.
I. Procedural and Factual Background
The record, in relevant part, reflects the following transpired during the initial jury selection process on December 11 and 12, 1984.
During voir dire defendant, through his attorney, exercised his first three peremptory challenges against prospective jurors Darrell S. Street, Carol Pinkney, and James T. Mitchell, each of whom is Black.
Street stated that he lived in Los Angeles in the general vicinity of Washington and Crenshaw Boulevards. He was single and worked as a billing supervisor in the home delivery department of the Los Angeles Times. He had no prior jury experience. Street disclosed that his brother was a retired deputy sheriff, that several of his neighbors were attorneys, and that a Court of Appeal justice lived nearby.
Pinkney stated that she lived in Inglewood and that she was separated from her husband. She also disclaimed any prior jury experience. Out of the presence of the other jurors, Pinkney disclosed that her estranged husband had been shot by the police when he was arrested for being under the influence of PCP, that her brother had been arrested for carrying a loaded weapon in his vehicle, and that she herself had been recently stopped at gunpoint by police officers who believed that the vehicle she was driving, which was her own, had been stolen. Pinkney further disclosed that she had been in four automobile accidents. She also stated that during the course of her employment as a ward clerk in a hospital she occasionally saw victims of automobile accidents.
Mitchell stated that he lived in the central part of Los Angeles and that he was single. He was employed as a recruiter for the Urban League. Mitchell *Supp. 4 expressed several complaints against law enforcement officers and the court system. In particular he was concerned about the treatment his brother had received many years earlier after his brother was found to be insane when he killed Mitchell’s father.
Following defendant’s third peremptory challenge, the prosecutor approached the bench and expressed her concern about defendant’s apparent attempts to excuse all prospective Black jurors. The trial court agreed that her concern was warranted under Wheeler. (People v. Wheeler (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748].) The court then pointed out that defendant is White while both the victim and the People’s witnesses are all Black.
Defense counsel responded by positing various reasons for excusal of the three Black prospective jurors. He asserted that Mitchell was excused because he perceived Mitchell as a person who had “a chip on his shoulder with the entire court system’’ and who could not render a fair and impartial decision. Defense counsel also claimed that Mitchell’s negative attitude towards law enforcement would be unimportant to his defense strategy since law enforcement played a minimal role in this case.
The court expressly disagreed with this latter claim, pointing out that the testimony of the Black investigating officer would bring in certain statements made by defendant.
As for Pinkney, defense counsel explained that he believed that she also had so many problems with the court system that she could not be fair and impartial.
Finally, defense counsel stated that he “really [did not] have an answer regarding Mr. Street as I do with the other two.” He added, however, that regardless of race, he would have excused Pinkney and Mitchell.
When defense counsel announced that he had no plans to challenge the remaining Black on the panel, the prosecutor pointed out that there were no Black males remaining and that the one remaining Black was Mrs. Harris, a female.
The court deferred ruling on the Wheeler motion, and voir dire continued. Defendant later exercised a fourth peremptory challenge to excuse a White juror, Hannah Han-Rosebrock.
Prior to jury selection the next morning, the People presented additional argument in support of their motion. The court then found that the People *Supp. 5 had made a prima facie showing that defendant had utilized peremptory challenges systematically on the basis of group bias. It next invited further explanations from defense counsel.
In response, defense counsel asked the court to consider his statements made on the previous day and added the following explanations: He had excused Street “solely on the basis that I thought he lived too close to the area where the accident occurred. He was single. I also noted, judge, that he was nodding off two times way before I dismissed him.” He excused Pinkney, because she was “scatterbrained,” worked in a hospital, and had seen gunshot wounds and stabbings. She was therefore not someone defendant wanted to be deciding his fate. As for Mitchell, he reiterated his concern with Mitchell’s law enforcement problems, expressed his concern that Mitchell had caused an earlier disturbance in the court, and stated his belief that “a person working on the Urban League” should not be deciding what happens to defendant.
Defense counsel reminded the court that he had previously indicated that he would not challenge Mrs. Harris, who was in fact selected as a juror. He argued that “we are making too much out of the black race here” and accused the People of attempting to exclude Whites systematically by dismissing four White jurors.
The prosecutor took exception to defense counsel’s stated reasons, essentially arguing that defense counsel was trying to cover his tracks with respect to the three Black prospective jurors who had been peremptorily excused. She pointed out that Mrs. Harris, who is Black and was not peremptorily challenged, had a one-and-one-half-year-old child. The Black victim was only two years old at the time of the incident. She also pointed out that defense counsel only challenged the White prospective juror after the Wheeler motion was made and that this particular person was in fact on the panel prior to Pinkney and Mitchell, who had been called to fill in slots left vacant by excused prospective jurors. The prosecutor also disclaimed any personal knowledge of Street nodding in court.
The trial court rejected the explanations proffered by defense counsel. The court announced that it was not satisfied that the peremptory challenges had been exercised for specific bias and found that the stated grounds were not reasonably relevant to the particular case on trial. The court noted that defense counsel had conducted only minimal voir dire questioning of the three excused prospective Black jurors, who were “two males and a female with different and varied life experiences and backgrounds.” The court then dismissed the jury members selected thus far and quashed the remaining venire.
*Supp. 6 On December 13, 1984, a new jury venire was empaneled. On December 17, 1984, a jury was selected without further objections by the prosecution or any objections by the defense as to the jury selection process.
II. Discussion
A peremptory challenge is “an objection to a juror for which no reason need be given, but upon which the court must exclude him.” (Pen. Code, § 1069.)
In People v. Wheeler, supra, 22 Cal.3d 258, our Supreme Court held that “the use of peremptory challenges to remove prospective jurors on the sole ground of group bias violates the right to trial by a jury drawn from a representative cross-section of the community under article I, section 16, of the California Constitution.”[1] (Wheeler, supra, 22 Cal.3d 258, 276-277.) The Wheeler court explained that “[i]f a party believes his opponent is using his peremptory challenges to strike jurors on the ground of group bias alone, he must raise the point in timely fashion and make a prima facie case of such discrimination to the satisfaction of the court.” (Id., at p. 280.)
Initially, defendant argues that the Wheeler peremptory challenges restriction applies only to peremptory challenges exercised by the prosecution. He concludes that the court therefore erred in finding that the Wheeler principle applied to defendant’s use of peremptory challenges against the three Black prospective jurors.
*Supp. 7 We disagree.
“It has always been understood that public support for a system of justice depends not only on the capacity of that system to render justice in fact, but also on its ability to project to the parties and public an unimpeachable image of fairness. The peremptory challenge has long acted as a fixative for preserving that image. Its purpose has always been to insure that criminal trials are conducted before jurors who not only proclaim their impartiality, but whose ability to be evenhanded is not seriously questioned by the parties.” (People v. Williams (1981) 29 Cal.3d 392, 404 [174 Cal.Rptr. 317, 628 P.2d 869]; fn. omit.) “[I]t is not ‘a function of the examination of prospective jurors ... to prejudice the jury for or against a particular party . . . (Id., at p. 408.)
In Wheeler, supra, 22 Cal.3d 258, the court expressly announced that “the People no less than individual defendants are entitled to a trial by an impartial jury drawn from a representative cross-section of the community. Furthermore, to hold to the contrary would frustrate other essential functions served by the requirement of cross-sectionalism [such as legitimating the judgments of the courts, promoting citizen participation in government, and preventing further stigmatizing of minority groups], . . . For example, when a white defendant is charged with a crime against a black victim, the black community as a whole has a legitimate interest in participating in the trial proceedings; thát interest will be defeated if the prosecutor does not have the power to thwart any defense attempt to strike all blacks from the jury on the ground of group bias alone.” (Wheeler, supra, pp. 267, 282, at fns. 6, 29; see also, People v. Trevino (1985) 39 Cal.3d 667, 679 [217 Cal.Rptr. 652, 704 P.2d 719].)
Defendant’s attempt to derogate the significance of such language as dicta is of no avail. It was in the context of expressly finding that the People have “the right to object to the same misuse of peremptory challenges on the part of defense counsel” “under the constitutional theory we adopt herein ...” that the Wheeler court made the observations quoted in the preceding paragraph. Accordingly, such language does not constitute merely an “aside” or a “throw-away point.” Instead, it reflects the mandate of the California Supreme Court, which is a matter that this court cannot disregard.[2]
*Supp. 8 Defendant’s remaining contention concerns the trial court’s finding that defendant failed to sustain his burden to justify his use of the peremptory challenges in question.[3] Essentially, he asserts that the court was bound to accept his explanations.
We ^gain disagree.
“If the court finds that a prima facie case has been made, [which defendant here concedes,] the burden shifts to the other party to show if he can that the peremptory challenges in question were not predicated on group bias alone. The showing need not rise to the level of a challenge for cause. But to sustain his burden of justification, the allegedly offending party must satisfy the court that he exercised such peremptories on grounds that were reasonably relevant to the particular case on trial or its parties or witnesses— i.e., for reasons of specific bias. . . . He, too, may support his showing by reference to the totality of the circumstances: for example, it will be relevant if he can demonstrate that in the course of this same voir dire he also challenged similarly situated members of the majority group on identical or comparable grounds. And again we rely on the good judgment of the trial courts to distinguish bona fide reasons for such peremptories from sham excuses belatedly contrived to avoid admitting acts of group discrimination. ” (Wheeler, supra, 22 Cal.3d at pp. 281-282.)
In the present case the trial court expressly stated that it was not satisfied with the explanations put forward by defendant, especially as to prospective Juror Street. We uphold the court’s rejection of defendant’s explanations as unsatisfactory.
“[I]t is imperative, if the constitutional guarantee is to have real meaning, that once a prima facie case of group bias appears the allegedly offending party [is] required to come forward with explanation to the court that demonstrates other bases for the challenges and that the court satisfy itself that the explanation is genuine. This demands of the trial judge a sincere and reasoned attempt to evaluate the . . . explanation in light of the circumstances of the case as then known, his knowledge of trial techniques, and his observations of the manner in which the [offending party] has examined members of the venire and has exercised challenges for cause or peremptorily. . . .” (People v. Hall (1983) 35 Cal.3d 161, 167-168 [197 Cal.Rptr. 71, 672 P.2d 854].)
*Supp. 9 From the foregoing recital of law it is clear that the trial court’s determination of specific bias or group bias revolves around the issue of credibility.[4] “Questions as to the credibility of witnesses and the weight to be given their testimony are for the trier of facts, and, ... it is the trier of facts who must determine to what extent testimony is to be believed or disbelieved.” (Pierson v. Superior Court (1970) 8 Cal.App.3d 510, 518 [87 Cal.Rptr. 433].) Similarly, it is the function of the trial court to evaluate and determine the genuineness of the explanations offered by the offending party to rebut the inference of impermissible group bias. (Hall, supra, 35 Cal.3d at pp. 167-168.) As an appellate court, we cannot retry credibility. (People v. French (1978) 77 Cal.App.3d 511, 523 [143 Cal.Rptr. 782].) Instead, we must defer to the trial court’s assessment of the proffered explanations. (See, e.g., People v. Clay (1984) 153 Cal.App.3d 433, 453 [200 Cal.Rptr. 269]; cf. id., at pp. 455-456; People v. Randle (1982) 130 Cal.App.3d 286, 295 [181 Cal.Rptr. 745]; see also, People v. Johnson (1978) 22 Cal.3d 296, 299-300 [148 Cal.Rptr. 915, 583 P.2d 774] [where proffered reason was insufficient as a matter of law].)
The judgment is affirmed.
Bernstein, J., and Reese, J., concurred.

The right to a trial “by impartial and unprejudiced jurors” is implicit in the right to a jury trial guaranteed by article I, section 16, of the California Constitution. (Wheeler, supra, at p. 265.) It is now settled, however, that the Sixth Amendment’s express guaranty of an impartial jury is applicable to the states through the Fourteenth Amendment to the federal Constitution. (Duncan v. Louisiana (1968) 391 U.S. 145, 149 [20 L.Ed.2d 491, 496, 88 S.Ct. 1444].)
Recently, the United States Supreme Court in Batson v. Kentucky (1986) 476 U.S. 79 [90 L.Ed.2d 69, 106 S.Ct. 1712] held that “the State’s privilege to strike individual jurors through peremptory challenges, is subject to the commands of the Equal Protection Clause. . . . [T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State’s case against a black defendant.” (Id., at p. 89 [90 L.Ed.2d at pp. 82-83]; fn. omit.) The Supreme Court, however, stated: “We express no views on whether the Constitution imposes any limit on the exercise of peremptory challenges by defense counsel.” (Id., at p. 89, fn. 12 [90 L.Ed.2d at p. 82].) Nonetheless, the court observed that “[t]he harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice. Discrimination within the judicial system is most pernicious because it is ‘a stimulant to that race prejudice which is an impediment to securing to [black citizens] that equal justice which the law aims to secure to all others.’” (Id., at p. 88 [90 L.Ed.2d at pp. 81-82].)

In People v. Trevino, supra, 39 Cal.3d 667 our Supreme Court stated: “In Wheeler we suggested that the People also have the right under the representative cross-section requirement to challenge the defendant’s use of peremptory challenges. That issue is not now before this court.” (Id., at p. 682, fn. 10.) We note that the word “suggested” detracts somewhat from the force of what we perceive the Wheeler mandate to be. Nonetheless, the Trevino court did not in fact disapprove or overrule the language in Wheeler giving rise to such right. We therefore conclude that the mandate remains intact and must be implemented on the facts presented in the present case.

Defendant’s justification below that the People systematically excluded White potential jurors must be rejected summarily. Defendant cannot sustain his burden “by attempting to cast a different burden on his opponent.” (Wheeler, supra, at p. 283, fn. 30.)

In Hall the court deemed “it unnecessary to remind counsel, whether prosecutor or defender, of their legal and ethical responsibilities to seek justice and to offer only truthful reasons for the exercise of peremptory challenges.” (Hall, supra, at p. 169, fn. 11.)