[No. B056299. Second Dist., Div. Seven. Dec. 14, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL ANTHONY ROJAS, Defendant and Appellant.

## COUNSEL

James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, Pamela C. Hamanaka and Kenneth C. Byrne, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WOODS (Fred), J.**—Charged with special circumstance murder (Pen. Code,[1] §§ 187, 190.2, subd. (a)(15) [lying in wait], 190.2, subd. (a)(17) [robbery], 190.2, subd. (a)(17) [burglary]; count I), robbery (§§ 211, 12022, subd. (a); count II), and burglary (§§ 459, 12022, subd. (a); count III) a jury found appellant guilty of first degree robbery (count II), first degree burglary (count III) and accessory after the fact (§ 32), a lesser related offense to murder (count I). The jury found the robbery firearm allegation (§ 12022, subd. (a)) true but the burglary firearm allegation (§ 12022, subd. (a)) not true. Appellant was sentenced to state prison for seven years.

Appellant contends *Wheeler* error (*People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748]) and the erroneous admission of hearsay evidence require reversal. He also claims sentencing error. Except for failure to stay a concurrent burglary sentence, we find no error and, as modified, affirm the judgment.

### FACTUAL BACKGROUND

There being no insufficiency of evidence claim, the facts may be stated simply.

[1]Unless otherwise noted, statutory references are to the Penal Code.

A friend of appellant's, Evan Nakahara[2] (Evan), had an intermittent personal relationship with Beatrice Viveiros (Bea), a 20-year-old woman who lived with her father in San Pedro. Mr. Viveiros had an extensive gun collection which he kept in a house safe. Bea knew the combination.

In early July 1989 Evan told another friend, Edwin Skinner, that Bea's father had a nice gun collection, he was going to steal those guns, "our old buddy Mike" (appellant) was going with him, and he, Evan, was going to kill Bea.

On July 10, 1989, in a telephone conversation, Evan told appellant he was going to steal Mr. Viveiros' guns and asked him to help. Appellant asked if Bea would be present and Evan said yes. When appellant asked how the guns could be stolen with her present, Evan said "Dead men tell no tales." Evan said he was going to shoot her. Appellant testified he told Evan, "You're crazy" and hung up.

The next day, July 11, 1989, Evan borrowed appellant's duffle bag and the two of them drove in Evan's car to Bea's house. When they arrived around 1 p.m. they found Bea at home with her friend Kim. After talking for awhile, Evan asked Bea to help him empty his car trunk. While they were doing so, Evan asked Kim when she would leave for work. She said around 2:45 p.m. Evan then asked Bea when her father would return home from work. She said between 4 and 4:30.

Kim left and the others went inside. Soon Evan "pestered" Bea into opening the safe so he could "play with" the guns. Appellant remained in the living room when Evan and Bea went to the rear of the house. Appellant heard a stereo come on loud and not long after, four shots. Evan appeared and told appellant to help him with the guns. Appellant saw Bea lying face down in the hallway.

Appellant and Evan loaded Mr. Viveiros's guns in two duffle bags, carried them to Evan's car, and put them into the trunk. They drove to Evan's apartment and brought the guns inside. Appellant, at Evan's invitation, took two of the guns. Evan then drove appellant to work.

Mr. Viveiros returned home about 4:20 p.m. and found his daughter dead and his guns missing. He called the police.

Some hours later, about 1:30 a.m. on July 12, 1989, the police arrested Evan at his home, recovered Mr. Viveiros's guns, found the murder weapon, and discovered a duffle bag with appellant's name.

---

[2]Originally a codefendant of appellant's, their cases were bifurcated before trial.

From jail, Evan telephoned appellant and told him he had been arrested.

That afternoon, July 12, 1989, appellant called the police and surrendered.

At trial, appellant testified he hadn't believed Evan would steal the guns or shoot Bea—until he heard the shots.

DISCUSSION

1. *Appellant contends there was Wheeler error.*

■ Appellant contends the prosecutor and the trial court committed *Wheeler* (*People v. Wheeler, supra*, 22 Cal.3d 258) error.

■ As the California Supreme Court has recently stated: "The principles first articulated in that case are now well settled. [Citations.] A party may not use peremptory challenges to remove prospective jurors solely on the basis of group bias. Group bias is a presumption that jurors are biased merely because they are members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds. . . . Under *Wheeler*, of course, which is based on the right to trial by a representative jury, a defendant need not be a member of the group to challenge its exclusion. [Citation.]

■ "If a party believes an opponent is improperly using peremptory challenges for a discriminatory purpose, that party must make a timely objection and a prima facie showing that the jurors are being excluded on the basis of group bias. [Citation.] To establish a prima facie case, the moving party should first make as complete a record as possible; second, the moving party must establish that the persons excluded are members of a cognizable group; and third, the moving party must show a strong likelihood that the persons are being excluded because of group association. [Citations.] Once the moving party has established a prima facie case, the burden shifts to the other party to come forward with a race-neutral explanation related to the particular case to be tried. [Citations.]

■ "This court and the high court have professed confidence in trial judges' ability to determine the sufficiency of the prosecutor's explanations. In *Wheeler*, we said that we will 'rely on the good judgment of the trial courts to distinguish bona fide reasons for such peremptories from sham excuses belatedly contrived to avoid admitting acts of group discrimination.' [Citation.] Similarly, the high court stated in *Batson v. Kentucky* [(1986) 476 U.S. 79 (90 L.Ed.2d 69, 106 S.Ct. 1712)] that 'the trial judge's findings in the context under consideration here largely will turn on evaluation of

credibility,' and for that reason 'a reviewing court ordinarily should give those findings great deference.' (476 U.S. at p. 98, fn. 21 [90 L.Ed.2d at p. 89].)

"In *People* v. *Johnson* [(1989) 47 Cal.3d 1194 (255 Cal.Rptr. 569, 767 P.2d 1047)] we reemphasized the need for 'a standard of truly giving great deference to the trial court in distinguishing bona fide reasons from sham excuses.' (47 Cal.3d at p. 1221.) We disapproved the approach taken earlier in *People* v. *Trevino* (1985) 39 Cal.3d 667 [217 Cal.Rptr. 652, 704 P.2d 719], in which we had disallowed subjective reasons for peremptory challenges and had engaged in a comparative analysis of various jurors' responses to evaluate the bona fides of the prosecutor's stated reasons. We disapproved the *Trevino* approach because nothing in *Wheeler* disallows reliance on the prospective jurors' body language or manner of answering questions as a basis for rebutting a prima facie case, and because comparative analysis of jurors unrealistically ignores 'the variety of factors and considerations that go into a lawyer's decision to select certain jurors while challenging others that appear to be similar.' (47 Cal.3d at pp. 1219, 1220.)

"We reaffirmed in *People* v. *Johnson, supra,* 47 Cal.3d 1194, however, that the trial court must make ' "a sincere and reasoned" ' attempt to evaluate the prosecutor's justifications. (*Id.* at p. 1216, citing *People* v. *Hall* [(1983) 35 Cal.3d 161, 167-168 (197 Cal.Rptr. 71, 672 P.2d 854)].) Furthermore, every questioned peremptory challenge must be justified: 'If the court finds that the burden of justification is not sustained as to any of the questioned peremptory challenges, the presumption of their validity is rebutted' and the court must dismiss the venire and begin jury selection anew. (*Wheeler, supra,* 22 Cal.3d at p. 282.)" (*People* v. *Fuentes* (1991) 54 Cal.3d 707, 713-715 [286 Cal.Rptr. 792, 818 P.2d 75].)

Defense counsel first raised possible *Wheeler* error after the prosecutor had peremptorily excused three Black women prospective jurors. But when the trial court asked defense counsel if he was requesting the court to make a preliminary finding (*People* v. *Wheeler, supra,* 22 Cal.3d 258, 281), defense counsel responded: "I think that is something we should be aware of. I guess I would be asking for a preliminary finding, your Honor. It may be premature at this time, but three out of five is—"

During the ensuing colloquy the trial court made clear that a prima facie case of group bias had not been shown. When the prosecutor offered to state his reasons for each challenge the trial court responded, "I don't think you

need to do so. I thought, when those people were giving their answers, that they wouldn't make it."[3]

Defense counsel did not press his objection and, on appeal, appellant does *not* contend excusing these three prospective jurors constitutes *Wheeler* error.

Thereafter, in exercising the remainder of his 20 peremptory challenges, the prosecutor excused 2 other Black women.[4] Defense counsel again made a *Wheeler* objection.

This time, the trial court impliedly found a prima facie case of group bias had been established. It required the prosecutor to state his reasons for excusing not only the last two Black women prospective jurors but also the other three.

After an extended hearing, the trial court deferred its ruling until the following day, stating "I think it's a very serious motion. As I said, I'm very concerned about it, so I'm going to sleep on it tonite [*sic*]. I'll give you my determination in the morning."

The next day, after fully explaining its ruling, the trial court denied the *Wheeler* motion.

 Appellant contends the trial court erred. His focus is narrow. He asserts the trial court failed "to conduct a sincere and reasoned evaluation of the prosecutor's justifications." We disagree.

As we have indicated, the trial court expressly stated its concern about the motion. It not only afforded defense counsel full opportunity to argue the motion but required the prosecutor to explain in detail his reasons for excusing each challenged Black woman prospective juror. Then it deferred ruling so it could further consider the matter. We find no reason to doubt the trial court's sincerity.

In denying the *Wheeler* motion the trial court gave two reasons. First, that Black women are not a cognizable class. This reason was incorrect. (*People v. Motton* (1985) 39 Cal.3d 596, 605-606 [217 Cal.Rptr. 416, 704 P.2d

---

[3]E.g., one of the three excused jurors stated she had had no positive experiences with police officers, one of her brothers had been arrested for felony assault because the police wanted "to put something on him," and another brother had been arrested for burglary.

[4]Three Black males were not challenged and served as trial jurors.

176].) Second,[5] that the prosecutor's reasons for excusing Black women were race-neutral and therefore not violative of *Wheeler*.

We find the trial court made a sincere and reasoned evaluation of the prosecutor's challenge-justifications (*People* v. *Fuentes, supra,* 54 Cal.3d at p. 715), and have no reason to overturn its determination.

2. *Appellant contends the trial court erred in admitting hearsay evidence.*

Over defense objection, the trial court permitted Edwin Skinner to testify Evan told him he was going to steal guns from Bea's father *and appellant was going to come with him.*

■ Appellant contends the evidence was inadmissible hearsay and prejudicial. We disagree.

The trial court ruled there was substantial evidence of a conspiracy between Evan and appellant, and Evan's statement to Edwin Skinner may have been in furtherance of that conspiracy. Accordingly, the statement was admissible under Evidence Code section 1223.[6] The trial court was correct. (*People* v. *Brawley* (1969) 1 Cal.3d 277, 286-292 [82 Cal.Rptr. 161, 461 P.2d 361].)

Moreover, since appellant was acquitted of murder, the statement, even if erroneously admitted, could not have prejudiced him because he judicially confessed to both accessory after the fact and robbery. (*People* v. *Cooper* (1991) 53 Cal.3d 1158, 1161 [282 Cal.Rptr. 450, 811 P.2d 742]; see CALJIC No. 9.44.)

3. *Appellant contends the trial court prejudicially failed to state reasons for imposing the upper robbery term.*

■ Although the trial court conducted an extensive probation and sentence hearing; read and considered the probation report, the prosecutor's sentencing memorandum, defense counsel's sentencing memorandum and

---

[5]Although somewhat unartfully expressed, the trial court's meaning was clear.

[6]The section provides: "Evidence of a statement offered against a party is not made inadmissible by the hearsay rule if: [¶] (a) The statement was made by the declarant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of that conspiracy; [¶] (b) The statement was made prior to or during the time that the party was participating in that conspiracy; and [¶] (c) The evidence is offered either after admission of evidence sufficient to sustain a finding of the facts specified in subdivisions (a) and (b) or, in the court's discretion as to the order of proof, subject to the admission of such evidence."

letters written on appellant's behalf; and listened to oral argument from both defense counsel and the prosecutor—the trial court failed to expressly state its reasons for imposing the upper robbery term. The omission was error. (§ 1170, subd. (b); Cal. Rules of Court, rule 420(e).)

We find the error harmless. The prosecutor's sentencing memorandum, which the trial court considered, listed multiple aggravating factors. Moreover, the trial court's comments made clear its awareness of these factors. Any one of the following aggravating factors justify the trial court's sentence choice: (1) the crime involved great violence and cruelty (Cal. Rules of Court, rule 421(a)(1)); (2) the victim was particularly vulnerable (rule 421(a)(3)); (3) the crime was planned (rule 421(a)(8)); (4) the crime involved great monetary value (rule 421(a)(9)); and (5) the defendant took advantage of a position of trust (rule 421(a)(11)). (*People* v. *Castellano* (1983) 140 Cal.App.3d 608, 615 [189 Cal.Rptr. 692].) Under such circumstances, to remand for resentencing would be an "idle gesture." (*People* v. *Blessing* (1979) 94 Cal.App.3d 835, 839 [155 Cal.Rptr. 780]; see also *People* v. *Foster* (1992) 6 Cal.App.4th 1, 14 [7 Cal.Rptr.2d 748]; *People* v. *Green* (1988) 200 Cal.App.3d 538, 543 [246 Cal.Rptr. 164]; *People* v. *Preyer* (1985) 164 Cal.App.3d 568, 577 [210 Cal.Rptr. 807]; *People* v. *Hartsfield* (1981) 117 Cal.App.3d 504, 509-510 [172 Cal.Rptr. 794].)

4. *Appellant contends the trial court committed count I sentencing error.*

On count I, the lesser related offense of accessory after the fact (§ 32), the trial court sentenced appellant to state prison for two years, the term to be served concurrently with the seven-year enhanced robbery term.

Appellant contends this concurrent sentence violated section 654 by punishing him twice for the same conduct: assisting Evan carry the guns from the victim's house to Evan's car trunk.

Respondent does not contest that concurrent sentences may violate section 654. (*People* v. *Hunter* (1986) 184 Cal.App.3d 1531, 1537 [229 Cal.Rptr. 330].) Nor does respondent dispute that the identical conduct which made appellant guilty of robbery also made him guilty of accessory after the fact. But respondent argues there was substantial evidence appellant had *two* intents while stealing guns (to rob the victim *and* to aid Evan in the murder) and may therefore be punished for each. (*People* v. *Beamon* (1973) 8 Cal.3d 625, 639 [105 Cal.Rptr. 681, 504 P.2d 905].) We are not persuaded.

If appellant had dual independent, rather than incidental, intents while carrying guns from house to car, the trial court did not articulate them nor

does the record illuminate them. Unlike the many cases cited by respondent where a defendant during the commission of one crime unnecessarily committed an unrelated one (e.g., *People* v. *Cardenas* (1982) 31 Cal.3d 897 [184 Cal.Rptr. 165 [647 P.2d 569]) or engaged in a course of conduct involving separate harmful acts, each a crime (*People* v. *Perez* (1979) 23 Cal.3d 545, 552-553 [153 Cal.Rptr. 40, 591 P.2d 63]), here all appellant's *acts* constituted his commission of the robbery; only his mental state made those same acts a violation of section 32.

We find the unstayed concurrent sentence violates section 654.

### DISPOSITION

The judgment is modified as follows: the two-year concurrent sentence for accessory after the fact (§ 32) is stayed; the stay to become final upon appellant's completion of his sentence on count II. (*People* v. *Boyd* (1990) 222 Cal.App.3d 541, 576-577 [271 Cal.Rptr. 738].)

Lillie, P. J., and Johnson, J., concurred.

Appellant's petition for reivew by the Supreme Court was denied March 17, 1993. Mosk, J., was of the opinion that the petition should be granted.